**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **STM CONSTRUCTION, LLC** | § | **Case No. 25-43231** |
| | § | |
| **Debtor.** | § | |

**ORDER CONFIRMING DEBTOR'S NONCONSENSUAL
PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(b)**

On March 24, 2026, at 9:30 a.m., the Court held a hearing (the "Confirmation Hearing"), and on April 6, 2026, at 9:30 a.m., the Court held a continued hearing (the "Continued Confirmation Hearing") to consider confirmation of the *Chapter 11 Plan of Reorganization* (the "Plan")[1] filed herein by STM Construction, LLC (the "Debtor") on January 26, 2026 [Docket No. 59]. Present or making appearances at the hearing were counsel for the Debtor, the Debtor's representative, Eugene Kick, the Subchapter V Trustee appointed in the case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered an appearance in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of Mr. Kick at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.    **Subchapter V Debtor**.   The Debtor filed this case on October 28, 2025 (the "Petition Date") and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan.  In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.　**Jurisdiction**.  This Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed.

C.　**Venue**.  Venue in the Eastern District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

D.　**Notice**.  Due, adequate, and sufficient notice of the Plan and the order setting a hearing on confirmation [Docket No. 68] were served upon all creditors, interest holders, and parties requesting notice.  Accordingly, the method of service and solicitation of acceptance of the Plan, notice of the hearing to consider confirmation of the Plan, and notices of all other deadlines or requirements relating thereto (collectively, the "Confirmation Deadlines") were in compliance with the Federal Rules of Bankruptcy Procedure ("FRBP"), were adequate and reasonable under the circumstances of this case, and no further or additional notice of the confirmation hearing or the confirmation deadlines was necessary or required.

E.　**Objections to Confirmation**.  No parties, other than the Debtor, were present at the confirmation hearing. No parties timely objected to confirmation of the Plan or any such objections were resolved amicably.

F.　**Proper Classification of Claims** – 11 U.S.C. §§ 1122 and 1123.  The Plan adequately and properly identifies and classifies all claims.  Pursuant to 11 U.S.C. § 1122(a), the claims placed in each class are substantially similar to other claims in each such class.  Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of claims

created under the Plan and such classification does not unfairly discriminate among holders of claims. The classification of claims in the Plan is reasonable.

G.     **Specified Unimpaired Classes – 11 U.S.C. § 1123(a)(2)**.  The Plan specifies all classes or claims or interests that are not impaired under the plan.

H.     **Specified Treatment of Impaired Classes – 11 U.S.C. § 1123(a)(3)**.  The Plan specifies the treatment of all classes of claims or interests that are impaired under the Plan.

I.     **No Discrimination – 11 U.S.C. § 1123(a)(4)**.  The Plan provides for the same treatment of claims or interests in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.

J.     **Implementation of the Plan – 11 U.S.C. § 1123(a)(5)**.  The Plan provides adequate means for the Plan's implementation.

K.     **Non-Voting Equity Securities/Allocation of Voting Power – 11 U.S.C. § 1123(a)(6)**.  The Reorganized Debtor retained the Debtor's current equity interests.

L.     **Interests of the Creditors, Equity Security Holders, & Public Policy – 11 U.S.C. § 1123(a)(7)**.  The Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the Plan and any successor to such officer, director, or trustee.

M.     **Assumption & Rejection – 11 U.S.C. § 1123(b)(2)**.  The provisions of the Plan comply with, and are not inconsistent with, the applicable provisions of the Bankruptcy Code, including section 1123(b). Among other items, the Plan identifies and impairs or, as applicable leaves unimpaired, each Class of Claims pursuant to section 1123(b)(1), and it provides pursuant to section 1123(b)(2) for the assumption and assignment, or rejection, of the Debtor's previously unrejected executory contracts and unexpired leases. Pursuant to section 1123(b)(6) of the

Bankruptcy Code, the Plan contains other customary provisions that are consistent with the Bankruptcy Code, including: (i) provisions governing Distributions on account of Allowed Claims; (ii) procedures for resolving Disputed Claims; (iii) provisions regarding the modification of the Plan; and (iv) provisions for the retention of jurisdiction by this Court with respect to certain matters listed in Article XII of the Plan. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

N.      **Bankruptcy Rule 3016(a)**.  The Plan is dated and identifies the entity submitting the Plan as the Proponent.

O.      **Subchapter V Plan Requirements – 11 U.S.C. § 1189**.  The Plan complies with 11 U.S.C. § 1189 because it was filed by the Debtor not later than 90 days after the order for relief under Chapter 11.

P.      **Contents of a Subchapter V Plan – 11 U.S.C. § 1190**.  In compliance with § 1190, the Plan includes: (1) a brief history of the business operations of the debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor to make payments under the proposed plan for reorganization.  The Plan provides for the submission of all or such portions of the future earnings or other future income of the Debtor to the supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan.

Q.      **Satisfaction of Conditions – 11 U.S.C. § 1191(b)**.  The Court finds that the Plan satisfies the relevant provisions of 11 U.S.C. § 1129(a), other than paragraphs (8), (10) and (15) of that section, and, as a result, is a nonconsensual Subchapter V plan under 11 U.S.C. § 1191(b). With respect to the relevant provisions of 11 U.S.C. § 1129(a), the Court finds and concludes as follows:

1.⠀⠀⠀⠀11 U.S.C. § 1129(a)(1) and (a)(2).  The Plan and the Plan proponent comply with the applicable provisions of the Bankruptcy Code.

2.⠀⠀⠀⠀11 U.S.C. § 1129(a)(3).  The Plan was proposed in good faith and not by any means forbidden by law.

3.⠀⠀⠀⠀11 U.S.C. § 1129(a)(4).  Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

4.⠀⠀⠀⠀11 U.S.C. § 1129(a)(5).  The Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders, and with public policy; and the Plan proponent has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

5.⠀⠀⠀⠀11 U.S.C. § 1129(a)(6).  The Plan does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation.

6.⠀⠀⠀⠀11 U.S.C. § 1129(a)(7).  The Plan provides that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan, or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the

amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

7.      11 U.S.C. § 1129(a)(8).  This section does not apply under section 1191(b).

8.      11 U.S.C. § 1129(a)(9).  Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

a.      With respect to a claim of a kind specified in 11 U.S.C. §§ 507(a)(2) or 507(a)(3), on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal of the allowed amount of such claim;

b.      With respect to a class of claims of a kind specified in 11 U.S.C. §§ 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7), each holder of a claim of such class will receive:

i.      If such class has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; or

ii.      If such class has not accepted the Plan, cash on the Effective Date of the Plan equal to the allowed amount of such claim;

c.      With respect to a claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of such claim will receive on account of such claim regular installment payments in cash—

i.      Of a total value, as of the effective date of the Plan, equal to the allowed amount of such claim;

ii.      Over a period ending not later than 5 years after the date of the order for relief under 11 U.S.C. §§ 301, 302, or 303; and

iii.    In a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under 11 U.S.C. § 1122(b)); and

d.      With respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under 11 U.S.C. § 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (c).

9.      11 U.S.C. § 1129(a)(10). This section does not apply under section 1191(b).

10.     11 U.S.C. § 1129(a)(11). Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

11.     11 U.S.C. § 1129(a)(12). All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the Plan.

12.     11 U.S.C. § 1129(a)(13). The Debtor does not sponsor or provide any retiree benefit plans within the meaning of section 1114 of the Bankruptcy Code.

13.     11 U.S.C. § 1129(a)(14). The Debtor is not an individual.

14.     11 U.S.C. § 1129(a)(15). This section does not apply under section 1191(b).

15.     11 U.S.C. § 1129(a)(16). All transfers under the Plan, if any, are subject to nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a money, business, or commercial corporation or trust.

R. **Fair and Equitable – 11 U.S.C. § 1191(c)**. The Plan is fair and equitable with respect to each class of Claims or Interest because (i) with respect to a class of secured claims, the Plan meets the requirements of section 1129(b)(2)(A); and (ii) as of the Effective Date, the Plan provides that all of the projected disposable income of the Debtor will be used to make Plan payments in the 3-year period.

S. **Only One Plan - Section 1129(c)**. The Plan is the only plan confirmed in this chapter 11 case, and therefore, the Plan and this Confirmation Order comply with section 1129(c) of the Bankruptcy Code.

T. **Principal Purpose of the Plan – 11 U.S.C. § 1129(d)**. The principal purpose of the plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

U. **Good Faith Solicitation - Section 1125(e)**. The Proponent has complied with section 1125(e) in transmitting the solicitation materials and in soliciting and tabulating the vote and, as applicable, consent forms.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1. The Chapter 11 Plan of Reorganization filed by the Debtor on January 26, 2026 [Docket No. 59] and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a nonconsensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2. To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.　　The effective date of the Plan shall be May 8, 2026 ("Effective Date"), notwithstanding anything to the contrary in the Plan

4.　　In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.　　Within three days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.　　The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.　　The Debtor's owner, Eugene Kick (the "Disbursing Agent"), shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b). The Disbursing Agent will distribute plan payments in accordance with the terms of this Order and the Plan before the 8th of each month until all required payments have been made.

8.      Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

9.      Disbursements may be delivered by the Disbursing Agent to (i) the address list provided by the Debtor under paragraph 8; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions shall be made to such claimant as soon as practicable. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent shall deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

10. The Trustee shall file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file their final report and seek a discharge of their duties as Trustee.

11. The Trustee shall be compensated for their post-confirmation duties at their approved hourly rate. The Trustee may file a notice setting forth post-confirmation fees and expenses on a quarterly basis with the Court. All parties in interest will have fourteen days after the notice is filed to object to the Trustee fees and expenses disclosed therein. If no objection is received, the Debtor shall pay the Trustee without further order of the Court.

12. The Trustee shall file a post-confirmation final fee application within ninety days of the notice of completion of plan payments. The final fee application shall include all compensation received and disclosed in the quarterly post-confirmation notices filed with the Court.

13. The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

14. Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the

Debtor may, in accordance with the terms of the Plan, evaluate and determine whether to pursue any such retained claims.

15. Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

16. Pursuant to 11 U.S.C. § 1192, within thirty days of the filing of the Sub V Trustee's NDR or TFR, the Debtor shall file a motion for entry of the discharge order. In the motion for entry of discharge, the Debtor shall certify that (1) all payments required under the confirmed plan have been made, (2) all administrative expenses, including the approved fees and expenses of the Subchapter V Trustee have been paid in full, and (3) that the Debtor is entitled to entry of discharge.

17. The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

18. The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1193 and 1142, and Bankruptcy Rule 3020(d).

19. All property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

20. This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

21. The following language shall replace the treatment for the Texas Comptroller of Public Accounts in Paragraph 6.1 of the Plan:

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts (the "Comptroller"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller to pursue any non-debtor third parties for tax debts or claims, and the Comptroller specifically opts out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority tax claim of the Comptroller, the interest rate shall be the statutory interest rate of 7.75 percent; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Comptroller may amend their claims without leave of the Bankruptcy Court, including to reflect returns received or resolution of audit liabilities or any other tax liabilities owed by Debtor to the Comptroller.

The Comptroller shall not be required to file any proof of claim, motion, or request for payment to be paid for any administrative claims. The Comptroller shall not be required to file any proof of claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtor's business, including all post-petition taxes incurred by the Debtor after the Petition Date. All post-petition taxes owed to the Comptroller shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed by the Comptroller, and all delinquent returns for any tax type must be filed by Effective Date. If any post-petition taxes or Administrative Claims owed to the Comptroller are not due on the Effective Date, then such post-petition taxes or Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law. Debtor shall timely file and pay the 2026 Texas Franchise Tax return by the statutory deadline.

The priority tax portion of POC #2 owed to the Comptroller in the amount of $420,962.63 is an Allowed Priority Tax claim and shall be paid in full in 54 equal monthly installments of $9,276.40, which includes interest at the rate of 7.75% per annum. The first payment shall be due on May 15, 2026. The unsecured portion of POC #2 owed to the Comptroller in the amount of $32,787.17 shall be an Allowed General Unsecured Claim and be paid with Class 5.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas or comply with the agreed upon terms herein shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Reorganized Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the

Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt. The Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above. Notice of the default shall be served by first class mail upon the Reorganized Debtor at 830 CR 561, Princeton, Texas 75407, Attn: Eugene Kick, and by email to counsel for Debtor at btittle@tittlelawpllc.com as well as email for the Debtor bkick@stmconstructionllc.com. The ten-day cure period shall run from the date of email service.

Debtor shall file all delinquent returns due and owing to the Comptroller on or before Effective date and stay current on filings thereafter. Notwithstanding anything to the contrary in the Plan or this Order, the Debtor will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for any pending audits, the later of four years or the time any and all claim(s) based on such audit are resolved).

Signed on 4/24/2026

Brenda T. Rhoades    KC

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

- 14 -

**EXHIBIT A**

**Chapter 11 Plan of Reorganization**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **STM CONSTRUCTION, LLC** | § | **Case No. 25-43231** |
| | § | |
| **Debtor.** | § | |

## CHAPTER 11 PLAN OF REORGANIZATION

STM Construction, LLC, the debtor and debtor in possession in the above-captioned case, hereby proposes the following Plan pursuant to § 1121 of the Bankruptcy Code. The Debtor is a proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a chapter 11 reorganization plan for the Debtor. In summary, the Plan provides for the Debtor to restructure its debts by reducing its monthly payments to the amount of the Debtor's Disposable Income. The Debtor believes that the Plan will ensure Holders of Allowed Claims will receive greater distributions under the Plan than they would if the Debtor's Chapter 11 Case was converted to Chapter 7 and the Debtor's Assets liquidated by a Chapter 7 Trustee.

Subject to the restrictions on modifications set forth in § 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, as a proponent, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its confirmation, for the resolution of its outstanding Claims and Equity Interests, without prejudice to any Holders of Claims, Equity Interests or other parties in interest to object to same.

All Holders of Claims against, and Equity Interests in, the Debtor is encouraged to read the Plan in its entirety.

**NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN CONCERNING THE DEBTOR'S HISTORY, THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT ANY OTHER PARTY.**

## EXPLANATION OF THE PROCESS OF CONFIRMATION

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the

plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## VOTING PROCEDURES

**Unimpaired Class**. Claimants in Classes 1 and 6 of the Plan are not impaired under the Plan. Such Claimants are deemed to have accepted the Plan.

**Impaired Classes**. Claimants in Classes 2 through 5 of the Plan are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 5. Each holder of an Allowed Claim in Classes 2 through 5 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Tittle Law Firm, PLLC, Attn. Brandon J. Tittle, Esq., 13155 Noel Drive, Suite 900, Dallas, Texas 75240. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## BEST INTERESTS OF CREDITORS TEST

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estates' interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE I.
## DEFINITIONS

1.1     **Definitions**.

As used in the Plan, the following terms shall have the respective meanings specified

below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

"**Administrative Claims**" means a Claim for payment of an administrative expense of a kind specified in §§ 503(b), 507(b), and 1114(e)(2) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor incurred on or after the Petition Date but prior to the Effective Date, any indebtedness or obligations incurred or assumed by the Estate in connection with the conduct of the Debtor's business on or after the Petition Date and prior to the Effective Date, any Professional Fee Claim, all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code, and any Claim granted administrative-expense priority status by Final Order.

"**Allowance Date**" means the date on which a Claim is Allowed.

"**Allowed**" means a Claim or Equity Interest that: (a) is listed in the Schedules in a liquidated, non-contingent, and undisputed known amount, but only if no proof of Claim or proof of Equity Interest is filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date and no objection thereto has been timely filed; (b) is evidenced by a proof of Claim or proof of Equity Interest filed on or before the Bar Date, but only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest has been timely filed; (c) is allowed by a Final Order; or (d) is otherwise allowed pursuant to the terms of the Plan. Notwithstanding any other provision of the Plan, the term Allowed in reference to any Claim shall not include any Claim or Equity Interest held by any Claimant or purported Equity Interest Holder against whom the Debtor has asserted a Cause of Action by filing an objection or complaint/ petition with a court of competent jurisdiction. No Allowed Claim or Equity Interest shall include any penalty or any interest accrued after the Petition Date, except as otherwise provided herein

"**Assets**" shall have the meaning ascribed in Section 3.2 of the Plan.

"**Avoidance Actions**" means any cause of action commenced, or that that may be commenced before or after the Effective Date, pursuant to §§ 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, including, without limitation, such actions that arise under state law for fraudulent conveyance and other similar avoidance actions.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

"**Bar Date**" means the last date on which proofs of Claim may be timely filed against the Debtor unless otherwise extended by Final Order of the Bankruptcy Court, which was January 6, 2026, for all claimants.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"**Cash**" means Cash and cash equivalents.

"**Causes of Action**" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to equitable remedy, right to payment, and claim, including Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation: (a) any claim or right to recover damages (general, exemplary, or otherwise) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) unjust enrichment, suit on a sworn account, accounting, quantum meruit, restitution, (vi) malpractice, (vii) breach of contract, (viii) conversion, (ix) recharacterization, (x) alter ego, aiding and abetting, conspiracy, *respondeat superior*, or other vicarious or secondary liability claims relating to all of the aforementioned claims, or (xi) any other claim of the Debtor against any party, to the extent not specifically compromised or released pursuant to the Plan, or a Final Order entered by the Bankruptcy Court after notice and opportunity for hearing; (b) any claims of the Debtor for subordination under § 510 of the Bankruptcy Code or under other applicable laws; (c) any objection to any Disputed Claim that includes as a basis any counterclaim by the Debtor or the Estate for affirmative relief, and is pending and not resolved by Final Order as of the Effective Date, together with all liability of the Debtor or the Estate on account of such Disputed Claims; and (d) all claims and defenses asserted by the Debtor in a contested matter or an adversary proceeding or other civil litigation. Causes of Action also specifically include: (i) all Avoidance Actions; (ii) all tort and common law claims held by the Debtor against any person, including, without limitation, the following: (a) Persons that were or are joint venturers or partners with, or controlling persons of, the Debtor, (b) Governmental Units, including taxing authorities, (c) Holders of Equity Interests; and (iiii) all claims held by the Debtor whether in contract, tort, or statutory law against current or former: (a) customers, (b) Claimants, (c) officers, managers, members, and directors, (d) suppliers (including any person with whom the Debtor ever did business), (e) employees, (f) managers and affiliates, and (g) insurers (including, without limitation, for directors and officers liability coverage, business interruption, or similar claims).

"**Chapter 11 Case**" or "**Case**" means Debtor's bankruptcy case commenced by the filing of voluntary petition for relief for the Debtor on October 28, 2025, under chapter 11 of the Bankruptcy Code, administered under Case No. 25-43231 pending before Bankruptcy Judge Brenda T. Rhoades in the Bankruptcy Court.

"**Claim**" means any right to payment from the Debtor or its Estate, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable

remedy against the Debtor or its Estate for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown or as otherwise within the definition of "claim" as set forth in § 101(5) of the Bankruptcy Code

"**Claimant**" means a Person holding a Claim against the Debtor, property of the Debtor, the Estate, or any Asset.

"**Claims Objection Deadline**" shall be one hundred and eighty (180) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court by the Reorganized Debtor on or prior to such date.

"**Class**" means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to § 1122 of the Bankruptcy Code.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Collateral**" means any property or interest in property of the Estate that is subject to a Lien to secure the payment or performance of a Claim, which such Lien is not avoided, subject to avoidance under the Bankruptcy Code, or other applicable law or otherwise invalid under the Bankruptcy Code or applicable law.

"**Confirmation**" means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order of the Bankruptcy Court, and any amendment thereto, confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"**Contingent Claim**" means a Claim for which the Debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.

"**Debtor**" means STM Construction, LLC, the Debtor and Debtor-in-Possession in the Chapter 11 Case.

"**Debtor-in-Possession**" means the Debtor in its capacity as a debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

"**Deficiency Claim**" means any portion of a Secured Claim (a) to the extent the value of the Collateral securing such Claim is less than the amount of such Claim or (b) to the extent the amount of the Claim that is secured by a right of setoff is less than the amount of such Claim, each

as determined pursuant to § 506(a) of the Bankruptcy Code.

"**Disallowed**" means a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the Holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which no proof of Claim or proof of Equity Interest has been filed or deemed filed with the Bankruptcy Court by the Bar Date or pursuant to either the Bankruptcy Code or a Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or Equity Interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

"**Disposable Income**" means the income that is received by the Debtor from its business operations, including all proceeds received by the Reorganized Debtor from nail salon services, that is not reasonably necessary to be expended for the payment of its expenditures necessary for the continuation, preservation, or operation of the Debtor's business.

"**Disputed Claim**" means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order.  Before the Claim Objection Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules; or (d) such Claim is otherwise objectionable.

"**Distribution**" means the property distributed to the Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Bankruptcy Code.

"**Effective Date**" means thirty (30) days after the Court enters an order confirming the Plan.

"**Entity**" means an entity as such term is defined in § 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any ownership interest in the Debtor represented by shares of stock, or membership or partnership interest in the Debtor, including, to the extent provided by applicable law, any warrant, option, or other security to acquire any of the foregoing in the Debtor.

"**Estate**" means the bankruptcy Estate created on the filing of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"**Face Amount**" means (i) as to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the

Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor.

"**Final Order**" means an order or judgment under 28 U.S.C. § 158(a)(1) of the Bankruptcy Court or other court having jurisdiction over any matter that (a) has not been reversed, stayed, or vacated, (b) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and no such action has occurred, or (c) if a timely appeal is filed, upon completion of the appellate process either through the expiration of an initial deadline for invoking further appellate jurisdiction or, if in the United States Supreme Court, through the issuance of that Court's final decision; *provided*, *however*, no order shall fail to be a Final Order because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed to that order.

"**Governmental Unit**" means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

"**Holder**" means any Entity holding a Claim or an Equity Interest.

"**Impaired**" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Injunction Beneficiaries**" means the Injunction Beneficiaries as defined in Section 11.3 of the Plan.

"**LG Funding**" means LG Funding, LLC.

"**LG Funding Collateral**" means the collateral that serves as security for the LG Funding Secured Claim and includes all Assets of the Debtor.

"**LG Funding Secured Claim**" means the Secured Claim of LG Funding in the aggregate amount of $160,218.75 as of the Petition Date.  The Secured Claim of LG Funding may be identified by the proof of claim filed by LG Funding as claim number 5 on the Court's claim registry.  The debt owed to T Bank is secured by a Lien or Liens on the LG Funding Collateral.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed-of-trust lien, security interest, judicial lien, judgment lien, pledge, encumbrance, or writ of attachment.

"**Order**" Any order, mandate, precept, command, or direction formally given or entered by court of competent jurisdiction.

"**Person**" means as identified in § 101(41) of the Bankruptcy Code and includes an individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, Estate, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

"**Petition Date**" means October 28, 2025, the date on which the Debtor filed its voluntary

---

CHAPTER 11 PLAN OF REORGANIZATION—PAGE 7 OF 27

chapter 11 petition commencing the Chapter 11 Case.

"**Plan**" means this Chapter 11 Plan of Reorganization, as it may be amended or modified.

"**Plan Documents**" means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

"**Plan Rate**" means the Prime Rate plus 100 basis points (or 1 percentage point).

"**Post-Confirmation Service List**" means a list of parties-in-interest to whom post-confirmation service of process shall be provided. The Post-Confirmation Service List shall be limited, and shall consist of only (a) the Debtor, (b) the Subchapter V Trustee, (c) the United States Trustee, (d) any party who after entry of the Confirmation Order files a request for such notice with the Clerk, and (e) counsels/attorneys of records of the parties identified in (a) – (d).

"**Prime Rate**" shall mean the prime interest rate that runs approximately 300 basis points (or 3 percentage points) above the federal funds rate, which is the interest rate that banks charge each other for overnight loans made to fulfill reserve funding requirements. As of January 26, 2026, the prime interest rate is 6.75% in the United States.

"**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

"**Proof of Claim**" or "**Proof of Interest**" means a proof of claim or proof of interest, as the case may be, filed with the Bankruptcy Court with respect to the Debtor pursuant to § 501 of the Bankruptcy Code and Bankruptcy Rules 3001, 3002, or 3003 in accordance with the various orders of the Bankruptcy Court.

"**Proponent**" means the Debtor.

"**Pro Rata**" means the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class or if distribution is to multiple Classes of equal priority, the aggregate amount of all Allowed Claims in such Classes.

"**Reorganized Debtor**" means the post-Effective Date Debtor.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by or on behalf the Debtor in its Chapter 11 Case pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

"**Secured Claim**" means a Claim, if any, that is (a) secured by a valid, perfected and enforceable Lien under applicable state law or by reason of a Final Order on property in which one or more Debtor's Estate has an interest to the extent of the value of such property, or (b) subject to a permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff, in each case, as determined in accordance with § 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Holder of such Claim.

"**Specialty Capital**" means Specialty Capital, LLC.

"**Specialty Capital Collateral**" means the collateral that serves as security for the Specialty Capital Secured Claim and includes all Assets of the Debtor.

"**Specialty Capital Secured Claim**" means the Secured Claim of Specialty Capital in the aggregate amount of $114,196.40 as of the Petition Date.  The Secured Claim of Specialty Capital may be identified by the proofs of claim filed by Specialty Capital as claim number 6 on the Court's claim registry.  The debt owed to Specialty Capital is secured by a Lien or Liens on the Specialty Capital Collateral.

"**SQ Advance**" means Atlas Acquisitions LLC on behalf of SQ Advance.

"**SQ Advance Collateral**" means the collateral that serves as security for the SQ Advance Secured Claim and includes all Assets of the Debtor.

"**SQ Advance Secured Claim**" means the Secured Claim of SQ Advance in the aggregate amount of $148,178 as of the Petition Date.  The Secured Claim of SQ Advance may be identified by the proof of claim filed by SQ Advance as claim number 7 on the Court's claim registry.  The debt owed to SQ Advance is secured by a Lien or Liens on the SQ Advance Collateral.

"**Subchapter V Trustee**" means Behrooz P. Vida, as the Subchapter V Trustee appointed in this Chapter 11 Case.

"**Tax Claim**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities.

"**Unsecured Claim**" means a Claim against the Debtor, other than Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.  The rules of construction set forth in § 102 of the Bankruptcy Code shall apply.  Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an individual or Entity as a Holder of a Claim or Equity Interest includes that individual's or Entity's successors, assigns and affiliates.

## ARTICLE II.
## RULES OF CONSTRUCTION AND INTERPRETATION

**2.1     Rules of Construction**.  The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include

the masculine, feminine and the neuter.  Captions, articles, and section headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Any phrase containing the term "include" or "including" means including without limitation without the necessity of repeating same in each instance.  The rules set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Article of the Plan.

A capitalized term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code.  A capitalized term used in this Plan and not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Rules.

**2.2.** **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control).

## ARTICLE III.
## BACKGROUND

**3.1** **Description and History of the Debtor's Business**.  Founded in 2016, the Debtor is a family owned and operated general contractor that specializes in new construction, repairs/restorations, build outs, and project rescues of commercial and residential types.

**3.2** **Description of Debtor's Main Assets**.  As identified on the Debtor's Schedules filed at Docket No. 29, the Debtor's Assets include its: (i) cash; (ii) accounts receivable; (iii) office furniture and equipment; and (iv) miscellaneous tools.

**3.3** **Post-Confirmation Management**.  The post-confirmation management shall remain with the Debtor's owners, Eugene Kick and Ermalinda Kick.

**3.4** **Debtor's Compliance with the Code**.  The Debtor has filed this Plan in good faith. The Debtor represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor believes that the Plan complies with all applicable provisions of the Code. The Debtor does not believe that Subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of Section 1129 of the Code are applicable to the Debtor or the Plan. The Debtor affirmatively asserts that the Plan complies with the applicable provisions of Section 1129(a)(1) and has been proposed in good faith and not by any means forbidden by law under Section 1129 (a)(3). Further, the Debtor affirmatively asserts that they have complied with the applicable provisions of Section 1129(a)(2). The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor under Section 1129 (a)(11).

**3.5** **Liquidation Analysis**.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan

as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit A** and shows that all creditors of the Debtor would receive payment in full of their Allowed Claims in a Chapter 7 liquidation. All Allowed Secured Claims will be paid in full under this Plan. The equity interests shall retain their ownership

**3.6    Ability to Make Future Plan Payments and Operate without Further Reorganization**.  The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  Attached hereto as Exhibit B are projections of gross income, expenses and operating income for the next three (3) years (the "Projections").  It is anticipated that after confirmation, the Debtor will continue in business. Based upon the Projections, the Debtor believes it can service the debt to creditors.

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of organization, and all confirmation matters, <u>except</u> as otherwise provided herein, all Claims against and all Interests in the Debtor shall be classified as set forth in this Article IV.

**4.1    Administrative Claims**. As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims shall not be classified; theyare therefore excluded from the Classes of Claims and Interests set forth below.

**4.2    Classes of Claims and Interests**. A Claim or Interest is in a particular Class onlyto the extent the Claim or Interest is an Allowed Claim or Allowed Interest. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims(except for Administrative Claims) and Interests shall be classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment |
|---|---|---|
| 1 | Allowed Priority Tax Claim | The Holders of Allowed Priority Tax Claims shall be paid as follows:<br><br>The Debtor shall pay the Collin County Tax Assessor the full amount of its Priority Tax Claim of $631.72 plus interest at the rate of twelve percent (12%) per annum in thirty-six (36) consecutive monthly payments of **$20.98** commencing thirty (30) days after the Effective Date.<br><br>The Debtor shall pay Texas Comptroller of Public Accounts the full amount of its Priority Tax Claim of $435,901.73 plus interest at the rate of twelve percent (12%) per annum in thirty-six (36) consecutive monthly payments of **$14,478.18** commencing thirty (30) days after the Effective Date. |
| 2 | Allowed LG Funding Secured Claim | The Debtor shall pay the Holder of the LG Funding Secured Claim the full amount of its Secured Claim of $160,218.75 plus interest at the Plan Rate of 7.75% per annum in thirty-six (36) consecutive monthly payments of **$5,002.22** commencing thirty (30) days after the Effective Date. |

| | | |
|---|---|---|
| | | The Holder of the LG Funding Secured Claim is impaired and entitled to vote on the Plan. |
| 3 | Allowed SQ Advance Secured Claim | The Debtor shall pay the Holder of the SQ Advance Secured Claim the full amount of its Secured Claim of $148,178 plus interest at the Plan Rate of 7.75% per annum in thirty-six (36) consecutive monthly payments of **$4,626.29** commencing thirty (30) days after the Effective Date.<br><br>The Holder of the SQ Advance Secured Claim is impaired and entitled to vote on the Plan. |
| 4 | Allowed Specialty Capital Secured Claim | The Debtor shall pay the Holder of the Specialty Capital Secured Claim the full amount of its Secured Claim of $114,196.40 plus interest at the Plan Rate of 7.75% per annum in thirty-six (36) consecutive monthly payments of **$3,565.34** commencing thirty (30) days after the Effective Date.<br><br>The Holder of the Specialty Capital Secured Claim is impaired and entitled to vote on the Plan. |
| 5 | Allowed General Unsecured Claims | The Debtor shall make twenty-five (25) consecutive monthly payments commencing thirty (30) days after the Effective Date in the amount of **$800.00** followed by eleven (11) consecutive monthly payments in the amount of **$5,801.85**, which constitutes the Debtor's Disposable Income identified on the Debtor's Projections. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the monthly payment.<br><br>Holders of General Unsecured Claims are impaired and entitled to vote on the Plan. |
| 6 | Allowed Equity Interest in the Debtor | Pursuant to this Plan, the Equity Interest of the Debtor shall remain vested with the Debtor's owners, Eugene Kick and Ermalinda Kick.<br><br>The Holder of Allowed Equity Interest is deemed to have accepted the Plan and is not entitled to vote on the Plan. |

## ARTICLE V.
## TREATMENT OF UNCLASSIFIED CLAIMS

**5.1      Unclassified Claims.** Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

**5.2      Administrative Expense Claims.** The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the

Bankruptcy Court.

**5.3** **Professional Compensation and Reimbursement Claims**. All requests for allowance and payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. Any such Professional Fee Claim for which an application or request for payment is not filed with the Bankruptcy Court within that time period shall be released and forever barred and shall not be entitled to Distributions under the Plan. Objections to the payment of such Professional Fee Claims must be filed no later than seven (7) days prior to the hearing on such Professional Fee Claims. Professional Fee Claims shall be paid within seven (7) days upon the entry of an Order from the Bankruptcy Court approving the professional's fees.

**5.4** **Payment of Statutory Fees and Post-Petition Date Taxes**. Notwithstanding anything herein, all fees payable pursuant to 28 U.S.C. § 1930 and all Claims of a Governmental Unit of the type described in Section 503(b)(1)(B)-(C) of the Bankruptcy Code that were filed prior to the Administrative Claim Bar Date shall be treated as Allowed Administrative Expense Claims when such amounts become due and payable by the Debtor under applicable non-bankruptcy law. The dates on which those claims become due shall be their Allowance Date.

**5.5** **Payment of Subchapter V Trustee Fees.** All approved Subchapter V Trustee fees will be paid within seven (7) days of final Court approval of such fees.

**ARTICLE VI.**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**6.1** **Class 1 Claimant (Allowed Priority Tax Claim)** is unimpaired and shall be satisfied as follows: The Debtor shall pay the Collin County Tax Assessor the full amount of its Priority Tax Claim of $631.72 plus interest at the rate of twelve percent (12%) per annum thirty-six (36) consecutive monthly payments of **$20.98** commencing thirty (30) days after the Effective Date. The Debtor shall pay Texas Comptroller of Public Accounts the full amount of its Priority Tax Claim of $435,901.73 plus interest at the rate of twelve percent (12%) per annum in thirty-six (36) consecutive monthly payments of **$14,478.18** commencing thirty (30) days after the Effective Date.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Holders of Allowed Priority Tax Claims for a tax debt, including interest and penalties on such tax. This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Holders of Allowed Priority Tax Claims' setoff rights under 11 U.S.C. § 553. This provision is not admission by any party that such setoff rights exist.

Until the Debtor pays in full its obligations to the Holders of Allowed Priority Tax Claims pursuant to this Plan, the prepetition liens granted to the Holders of Allowed Priority Tax Claims shall remain in full force and effect. Upon completion of the plan payments, the prepetition liens granted to the Holders of Allowed Priority Tax Claims shall be deemed extinguished.

A failure by the Reorganized Debtor to make a payment to the Holders of Allowed Priority

Tax Claims pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fail to cure an Event of Default as to tax payments within thirty (30) calendar days after service of written notice of default from the Holder of Allowed Priority Tax Claim, the Holder of Allowed Priority Tax Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Reorganized Debtor: 830 CR 561, Princeton, TX 75407, Attn: Eugene Kick, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 13155 Noel Drive, Suite 900, Dallas, Texas 75240, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to bkick@stmconstructionllc.com and btittle@tittlelawpllc.com.

The Class 1 Claimants are unimpaired and are not entitled to vote.

**6.2** **Class 2 Claimant (Allowed LG Funding Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to LG Funding on behalf of its LG Funding Secured Claim is $160,218.75.  The Debtor shall pay the Holder of the LG Funding Secured Claim thirty-six (36) consecutive monthly payments of **$5,022.22** commencing thirty (30) days after the Effective Date, which includes an interest rate at the Plan Rate of 7.75% per annum.

Until the Debtor pays in full its obligations to LG Funding pursuant to this Plan, the prepetition liens granted to LG Funding shall remain in full force and effect.  Upon completion of the plan payments, the prepetition liens granted to LG Funding shall be deemed extinguished.

A failure by the Reorganized Debtor to make a payment to LG Funding pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fails to cure an Event of Default as to monthly payments within thirty (30) calendar days after service of written notice of default from LG Funding, may (a) enforce the entire amount of its claim, (b) impose a default interest rate as set forth in the prepetition loan documents, (c) exercise all rights and remedies under applicable nonbankruptcy law, and (d) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 830 CR 561, Princeton, TX 75407, Attn: Eugene Kick, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 13155 Noel Drive, Suite 900, Dallas, Texas 75240, Attn: Brandon John Tittle, Esq.  The Notice of default shall also be served via email to bkick@stmconstructionllc.com and btittle@tittlelawpllc.com.

The Reorganized Debtor shall be allowed to cure up to five (5) defaults.  If the Reorganized Debtor does not timely cure, or upon a fifth default, the automatic stay (if in effect), and the injunction described in Section 11.3 shall terminate as to LG Funding and the Reorganized Debtor's personal property and LG Funding would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 2 Claimant is impaired and entitled to vote on the Plan.

**6.3** **Class 3 Claimant (Allowed SQ Advance Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to SQ Advance on behalf of its SQ Advance Secured Claim is $148,178.00.  The Debtor shall pay the

---

Holder of the SQ Advance Secured Claim thirty-six (36) consecutive monthly payments of **$4,626.29** commencing thirty (30) days after the Effective Date, which includes an interest rate at the Plan Rate of 7.75% per annum.

Until the Debtor pays in full its obligations to SQ Advance pursuant to this Plan, the prepetition liens granted to SQ Advance shall remain in full force and effect. Upon completion of the plan payments, the prepetition liens granted to SQ Advance shall be deemed extinguished.

A failure by the Reorganized Debtor to make a payment to SQ Advance pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to monthly payments within thirty (30) calendar days after service of written notice of default from SQ Advance, may (a) enforce the entire amount of its claim, (b) impose a default interest rate as set forth in the prepetition loan documents, (c) exercise all rights and remedies under applicable nonbankruptcy law, and (d) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 830 CR 561, Princeton, TX 75407, Attn: Eugene Kick, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 13155 Noel Drive, Suite 900, Dallas, Texas 75240, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to bkick@stmconstructionllc.com and btittle@tittlelawpllc.com.

The Reorganized Debtor shall be allowed to cure up to five (5) defaults. If the Reorganized Debtor does not timely cure, or upon a fifth default, the automatic stay (if in effect), and the injunction described in Section 11.3 shall terminate as to SQ Advance and the Reorganized Debtor's personal property and SQ Advance would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 3 Claimant is impaired and entitled to vote on the Plan.

**6.4**    **Class 4 Claimant (Allowed Specialty Capital Secured Claim)** is impaired and shall be satisfied as follows: As of the date of this Plan, the Debtor believes the amount due to Specialty Capital on behalf of its Specialty Capital Secured Claim is $114,196.40. The Debtor shall pay the Holder of the Specialty Capital Secured Claim thirty-six (36) consecutive monthly payments of **$3,565.34** commencing thirty (30) days after the Effective Date, which includes an interest rate at the Plan Rate of 7.75% per annum.

Until the Debtor pays in full its obligations to Specialty Capital pursuant to this Plan, the prepetition liens granted to Specialty Capital shall remain in full force and effect. Upon completion of the plan payments, the prepetition liens granted to Specialty Capital shall be deemed extinguished.

A failure by the Reorganized Debtor to make a payment to Specialty Capital pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to monthly payments within thirty (30) calendar days after service of written notice of default from Specialty Capital, may (a) enforce the entire amount of its claim, (b) impose a default interest rate as set forth in the prepetition loan documents, (c) exercise all rights and remedies under applicable nonbankruptcy law, and (d) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor:

830 CR 561, Princeton, TX 75407, Attn: Eugene Kick, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 13155 Noel Drive, Suite 900, Dallas, Texas 75240, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to bkick@stmconstructionllc.com and btittle@tittlelawpllc.com.

The Reorganized Debtor shall be allowed to cure up to five (5) defaults. If the Reorganized Debtor does not timely cure, or upon a fifth default, the automatic stay (if in effect), and the injunction described in Section 11.3 shall terminate as to Specialty Capital and the Reorganized Debtor's personal property and Specialty Capital would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 4 Claimant is impaired and entitled to vote on the Plan.

**6.5** **Class 5 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: The Debtor shall make twenty-five (25) consecutive monthly payments in the amount of **$800.00** commencing thirty (30) days after the Effective Date then followed by eleven (11) consecutive monthly payments in the amount of **$5,801.85**, which constitutes the Debtor's Disposable Income identified on the Debtor's Projections. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the monthly payment.

A failure by the Reorganized Debtor to make a payment to the Holders of Allowed Unsecured Claims pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default within thirty (30) calendar days after service of written notice of default from the Holder of Allowed Unsecured Claim, the Holder of Allowed Unsecured Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 830 CR 561, Princeton, TX 75407, Attn: Eugene Kick, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 13155 Noel Drive, Suite 900, Dallas, Texas 75240, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to bkick@stmconstructionllc.com and btittle@tittlelawpllc.com.

The Reorganized Debtor shall be allowed to cure up to five (5) defaults. Upon a fifth default, the Holder of the Allowed Unsecured Claim at its option, may declare the default non-cureable and proceed to collect the remainder of the debt under state law.

The Class 5 Claimants are impaired and entitled to vote on the Plan.

**6.6** **Class 6 (Current Owners)** are unimpaired under the Plan and shall be satisfied as follows: The Equity Interests of the Debtor shall remain vested with the Debtor's owners, Eugene Kick and Ermalinda Kick.

The Class 6 Claimants are deemed to have accepted the Plan and are not entitled to vote on the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1** **Debtor, and Continued Operations**.  From and after the Effective Date, the Debtor will continue to exist as a Reorganized Debtor.  By reducing the Debtor's monthly obligations to creditors to the Reorganized Debtor's Disposable Income, the Reorganized Debtor will have sufficient cash to maintain operations and will allow the Reorganized Debtor to successfully operate following the Effective Date of the Plan.

**7.2** **Operations Between the Confirmation Date and Effective Date**.  During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.  In addition, the Debtor may take all actions as may be necessary or appropriate to implement the terms and conditions of the Plan.  Upon Confirmation of the Plan, all actions required of the Debtor to effectuate the Plan shall be deemed authorized and approved in all respects.

**7.3** **Payments by Disbursing Agent.**  If the Plan is confirmed under section 1191(a), payments to Holders of Allowed Claims in Classes 1 through 5 of the Plan will be made by the Debtor.

If the Plan is confirmed under section 1191(b), the Debtor proposes that the Debtor's member, Ermalinda Kick, serve as the disbursing agent.  There is cause to have Ermalinda Kick serve as the disbursing agent instead of the Subchapter V Trustee, because the costs of utilizing the services of the Subchapter V Trustee would be expensive.

**7.4** **Post-Confirmation Management.**  The Post Confirmation members of the Debtor are Eugene Kick and Ermalinda Kick, who will manage the operations of the Reorganized Debtor.

**7.5** **Post-Effective Date Plan Implementation.**  On and after the Effective Date, the Reorganized Debtor is authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**7.6** **Exemption from Certain Taxes and Fees**.  Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in

furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**7.7**   **Settlement of Claims and Controversies**.   Pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under the Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution under the Plan on account of thereof.  If the Confirmation Order is not entered or the Effective Date does not occur, the Debtor reserves its rights with respect to all disputes resolved and settled under this Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in the Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in the Debtor's and Estate's best interests and (b) fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.

**7.8**   **Vesting of Property of the Estate**.  If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**7.9**   **Retention of Causes of Action.**  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including but not limited to, all Avoidance Actions), are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date.  Following the Effective Date and the vesting of the Causes of Action with the Reorganized Debtor, the Reorganized Debtor shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, settle, or otherwise dispose of such Causes of Action shall be preserved.  Upon the Effective Date, and in accordance with the terms and conditions of this Plan, the Reorganized Debtor shall have all requisite standing and authority to administer the Causes of Action.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** **Assumption of Executory Contracts and Unexpired Leases**.   Except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date every Executory Contract identified on the attached Schedule of Assumed Executory Contracts shall be deemed Assumed upon the payment of the cure amount identified in that Schedule.   The Debtor/Reorganized Debtor reserves the right to modify the treatment of an Executory Contract pursuant to this Plan.   If a contract party objects to the treatment proposed in the Schedule of Assumed Executory Contracts, it must file an objection to this Plan or otherwise waives its right to object and shall be deemed to have consented to the assumption as proposed herein.   Each Executory Contract on the Schedule of Assumed Executory Contracts shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code.   Nothing contained in this Plan constitutes an admission by the Debtor that any such contracts or leases are "executory" or that the Debtor has any liability thereunder.   Further, such assumption is subject to the same rights that the Debtor held or holds on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law.   Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

**8.2** **Payments Related to Assumption of Executory Contracts**.  If not the subject of *bona-fide* dispute pursuant to this Article as of Confirmation, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Reorganized Debtor pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Cure Amounts identified on the Schedule of Assumed Executory Contracts or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract. In the event of a *bona-fide* dispute pursuant to this Article, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement by the Debtor and the party to the Executory Contract.

**8.3** **Claims Based on Rejection of Executory Contracts of Unexpired Leases**.  Any Claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be asserted in a proof of Claim filed with the Bankruptcy Court not later than thirty (30) days after the date on which the Executory Contract was rejected or deemed rejected. The Claimant shall have either a Class 6 General Unsecured Claim payable in accordance with the terms and conditions of this Plan.  Any such rejection Claims not timely filed shall be released and forever barred from payment pursuant to this Plan.  Any other bar date previously established for the filing of Claims based on the rejection of executory contracts or unexpired leases shall not be affected by this provision.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**9.1** **Objections to Claims**.  Following the Effective Date, an objection to the allowance of any Claim shall be in writing and filed by the Reorganized Debtor.  Any Disputed Claim as to

which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**9.1.1** Alternative Standing. Notwithstanding the foregoing, any party in interest that otherwise would have standing to object to a Claim absent the provisions of this Plan, may, on or before the Claims Objection Deadline, file a motion with the Bankruptcy Court requesting standing to so object on the basis that an advance, written demand has been made by the movant on the Reorganized Debtor to object to the Claim, and that said Reorganized Debtor has unjustifiably refused or failed to respond. Any such motion filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim which is the subject of the motion, until and including the date which is ten (10) business days following the date of entry of the Bankruptcy Court's order on the motion.

**9.2** **Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

**9.3** **Post-Confirmation Proofs of Claim and Amendments**. Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be filed in the Chapter 11 Case to assert a Claim against the Debtor or its Estate without prior authorization of the Bankruptcy Court, and any such proof of Claim that is filed without such authorization shall be deemed null, void and of no force or effect; *provided*, *however*, that the Holder of a Claim that has been evidenced in the Chapter 11 Case by the filing of a proof of Claim on or before the Bar Date shall be permitted to file an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**9.4** **Settlement of Disputed Claims**. From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and § 105(a) of the Bankruptcy Code, the Reorganized Debtor shall be entitled to compromise and settle objections to Disputed Claims as set forth below:

**9.4.1** Amount in Controversy Less than $100,000. If the amount in controversy of a Disputed Claim is less than $100,000.00, the Reorganized Debtor will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, with no further approval of or notice to the Bankruptcy Court.

**9.4.2** Amount in Controversy Greater than $100,000. If the amount in controversy of a Disputed Claim is greater than $100,000.00, the Reorganized Debtor shall be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fourteen

(14) days' notice filed with the Bankruptcy Court. If no objection to the proposed settlement of the Disputed Claim is filed within that fourteen-day time period or if any objecting party withdraws its objection to such settlement for any reason, the Reorganized Debtor may enter into the proposed settlement without further notice, and without the necessity of a motion hearing or order of the Bankruptcy Court. If a party objects to the proposed settlement and the proponent is unable to resolve the objection, the Bankruptcy Court shall set the matter for hearing applying the settlement guidelines of Bankruptcy Rule 9019 and, following the hearing, shall enter an Order resolving the dispute.

## ARTICLE X.
## CONDITIONS PRECENT

**10.1** **Conditions Precedent to Confirmation**. Confirmation of the Plan shall occur upon the satisfaction of the following conditions: (a) the Clerk of the Bankruptcy Court shall have entered an order or orders (i) confirming and giving effect to the terms and provisions of the Plan, (ii) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (iii) approving the Plan Documents, and (iv) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents.

**10.2** **Conditions Precedent to the Effective Date**. The Effective Date shall occur upon the satisfaction of the following conditions: (a) the Bankruptcy Court has approved the Plan and entered the Confirmation Order, the Confirmation Order has become a Final Order, and it authorizes the Debtor, and Reorganized Debtor to take all actions necessary or appropriate to implement and consummate the provisions of and transactions described in or contemplated in the Plan; (b) all documents effectuating the Plan and the transactions hereunder have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein.

## ARTICLE XI.
## EFFECTS OF CONFIRMATION

**11.1.** **Binding Effect**. Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

**11.2** **Discharge**. If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge

executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

    (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

    (2) if applicable, of the kind specified in section 523(a) of this title.

**11.3**    **Injunction**. Except as otherwise provided in the Plan or the Confirmation Order, during the duration of the Plan, all Persons, Entities, Holders of Claims, and Holders of Equity Interests against and in the Debtor are restrained and enjoined from taking any of the following actions against the Assets and the Reorganized Debtor (collectively the "**Injunction Beneficiaries**") on account of any such Claims or Equity Interests: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, or Equity Interest against the Injunction Beneficiaries, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Injunction Beneficiaries; (iii) creating, perfecting, or enforcing any encumbrance, security interest, or Lien of any kind against the Injunction Beneficiaries; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against ($x$) any obligation due the Debtor, ($y$) the Assets, or ($z$) the Injunction Beneficiaries. If allowed by the Bankruptcy Court, any Injunction Beneficiary injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' and experts' fees and disbursements and, in appropriate circumstances, may recover punitive damages. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under §§ 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect with respect to the Debtor until the Effective Date. For the avoidance of doubt, no release, exculpation, or injunctions shall be granted in contravention of section 524(e) of the Bankruptcy Code or Fifth Circuit authority, including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) and/or *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024).

**11.4**    **Insurance**. Except as otherwise expressly provided in this Plan, confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured party, unless the Reorganized Debtor rejects or otherwise terminates any insurance policy. Each insurance company is prohibited from – and the Confirmation Order shall include an injunction against – denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Case or the Plan, unless said policy is rejected or otherwise terminated hereunder.

## ARTICLE XII.
## RETENTION OF JURISDICTION

**12.1**    **Retention of Jurisdiction**. Notwithstanding entry of the Confirmation Order, or the entry of a final decree, with respect to the Chapter 11 Case, or any of them, the Bankruptcy Court shall retain jurisdiction from and after the Effective Date, to the fullest extent legally permitted, over the Chapter 11 Case, all proceedings arising under, arising in or related to the

Chapter 11 Case, the Confirmation Order and the Plan including, without limitation, jurisdiction to:

      **12.1.1** Determine (a) any Disputed Claims, and all related Claims remaining in controversy or otherwise Disputed after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (b) the validity, extent, priority, and avoidability and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (c) pre-confirmation tax liability pursuant to § 505 of the Bankruptcy Code, and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

      **12.1.2** Allow, disallow, estimate, liquidate or determine any Claim or Equity Interest against or in the Debtor and to enter or enforce any Order requiring the filing of any such Claim or Equity Interest before a particular date;

      **12.1.3** Determine / Approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor pursuant to § 365 of the Bankruptcy Code and the Plan;

      **12.1.4** Determine any request for payment of a potential Administrative Claim, including compensation of parties entitled thereto, or fees and reimbursements to the Debtor;

      **12.1.5** Resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was filed or whether a Disallowed Claim should be reinstated;

      **12.1.6** Implement the provisions of the Plan and enter Orders and injunctions in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

      **12.1.7** Issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan (including all exculpations and injunctions), any Plan Document, or any transaction contemplated under any of the foregoing, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

      **12.1.8** Determine issues relating to the garnishment of any Distributions payable under the terms of the Plan;

      **12.1.9** Modify the Plan pursuant to § 1127 of the Bankruptcy Code;

      **12.1.10** Preside over and adjudicate any and all Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date;

      **12.1.11** Resolve disputes concerning any reserves with respect to Disputed Claims

or the administration thereof;

**12.1.12** Resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Cases, any applicable Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is barred hereunder or for any other purpose;

**12.1.13** Preside over and determine any and all applications, claims, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Equity Interests) in the Chapter 11 Case;

**12.1.14** Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**12.1.15** Seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

**12.1.16** Consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**12.1.17** Recover all assets of the Debtor and property of the Estate, wherever located;

**12.1.18** Resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

**12.1.19** Hear any other matter not inconsistent with the Bankruptcy Code;

**12.1.20** Resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**12.1.21** Enforce any injunctions granted under the Plan;

**12.1.22** Approve settlements relating to any of the above;

**12.1.23** Determine any and all motions, applications, adversary proceedings, contested or litigated matters, including Causes of Action initiated by, against, or otherwise involving the Debtor.

**12.1.24** Hear and determine all matters necessary to enforce the rights, remedies, and obligations reserved for the Debtor, the Plan Documents, or the Confirmation Order, including interpreting any provision of any of the foregoing; and

**12.1.25** Enter a final decree and order concluding, closing, or terminating the Chapter 11 Case.

**12.2** **Limitation on Jurisdiction and Authority**. In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334 or authority to enter final judgments beyond that provided by applicable law, including the Constitution of the United States.

**12.3** **No New Requirements**. The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

**ARTICLE XIII.**
**MISCELLANEOUS PROVISIONS**

**13.1** **Authorization**. The Debtor, and the Reorganized Debtor after the Effective Date, shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**13.2** **Amendment of the Plan**. The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date. After the Effective Date, the Reorganized Debtor may, on order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

**13.3** **Non-Confirmation of the Plan**. The Proponents reserve the right to withdraw this Plan at any time prior to the Confirmation Date. If the Proponent withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, or any other Person.

**13.4** **Filing of Additional Documentation**. On or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**13.5** **Governing Law**. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

**13.6** **Headings**. Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

**13.7** **Severability**. Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Proponents reserve the

right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

     **13.8**    **All Claims and Equity Interests**.  The Plan is intended to deal with all Claims of whatever character whether or not Disputed, contingent, or liquidated and whether or not Allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code against and Equity Interests in the Debtor.  However, only those Claims and Equity Interests Allowed shall be entitled to receive the treatment afforded by the Plan.

     **13.9**    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

     **13.10**  **Section 1125(e) Good-Faith Compliance**.  The Proponents and their respective representatives and professionals shall be deemed to have acted in "good faith" under § 1125(e) of the Bankruptcy Code.

     **13.11**  **Notices**.  Any notice required to be given under this Plan shall be in writing and, except for a notice of change of address, shall be considered complete on the earlier of: (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Entities on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Entities on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.  Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtor and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

| | |
|---|---|
| <u>Debtor:</u> | <u>With copies to:</u> |
| STM Construction, LLC | Brandon J. Tittle |
| | Tittle Law Firm, PLLC |
| | 13155 Noel Drive, Suite 900 |
| | Dallas, Texas 75240 |
| | |
| <u>Subchapter V Trustee:</u> | Behrooz P. Vida - SBRA V |
| | 3000 Central Dr. |
| | Bedford, TX 76021 |

| United States Trustee: | Office of the U.S. Trustee |
| | Attn: Susan B. Hersh |
| | 1100 Commerce St., Ste. 976 |
| | Dallas, TXX 75242 |

**13.12  Confirmation Order**.  The Confirmation Order shall provide that unless expressly provided therein or by incorporation of this Plan, the Confirmation Order does not modify, alter or supersede any order of the Bankruptcy Court entered in the Bankruptcy Case.

Dated: January 26, 2026.                    Respectfully submitted by:

By:*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW FIRM, PLLC**
13155 Noel Drive, Suite 900
Dallas, Texas 75240
Telephone: 972.213.2316
Email: btittle@tittlelawpllc.com

**COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

**EXHIBIT A**

**Liquidation Analysis**

**STM CONSTRUCTION, LLC**
**LIQUIDATION ANALYSIS**

| **Assets** | | **Chapter 7** | | **Chapter 11** |
|---|---|---|---|---|
| Cash | $ | 28,504.46 | $ | 818,769.45 |
| Accounts Receivable | | - | | 236,407.13 |
| Office Furniture and Equipment | | 500.00 | | 3,700.00 |
| Tools | | 200.00 | | 1,070.37 |
| **Total Assets** | $ | 29,204.46 | $ | 1,059,946.95 |

| **Liabilities** | | | | |
|---|---|---|---|---|
| Administrative Fees | $ | 10,000.00 | $ | 117,000.00 |
| Secured Creditors | | 19,204.46 | | 422,593.15 |
| Priority Unsecured Creditor | | - | | 436,533.45 |
| Unsecured Creditors | | - | | 83,820.35 |
| **Total Liabilities** | $ | 29,204.46 | $ | 1,059,946.95 |

| | | | | |
|---|---|---|---|---|
| **Total Unsecured Creditors** | $ | 2,553,509.46 | $ | 2,553,509.46 |

| | | | |
|---|---|---|---|
| **Distributions to Unsecured Creditors** | | 0% | 3.3% |

**EXHIBIT B**

**3-Year Projections**

**STM Construction LLC**
**3-YEAR PROJECTIONS**
**YEAR 1**

| | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 349,112.00 | $ 191,869.96 | $ 184,549.15 | $ 194,952.11 | $ 214,460.07 | $ 205,683.57 | $ 201,086.53 | $ 182,544.49 | $ 175,995.60 | $ 171,398.56 | $ 156,156.52 | $ 151,434.48 |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Revenue** | | | | | | | | | | | | |
| Projects | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 |
| Facilities | - | - | 15,000.00 | 35,000.00 | - | - | - | - | - | - | - | - |
| **Total Revenue** | 352,807.00 | 352,807.00 | 367,807.00 | 387,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 | 352,807.00 |
| **Expenses** | | | | | | | | | | | | |
| Payroll | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 |
| Rent | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| Utilities | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Internet/Phone | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Quickbooks | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 |
| Office Supplies | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 |
| General Liability Insurance | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - |
| Umbrella Policy | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - |
| Builders Risk Policy | 25,000.00 | - | - | - | - | - | - | - | - | - | - | - |
| Auto Insurance Policy | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Workers Comp Insurance | 145.00 | - | - | 145.00 | 125.00 | - | 145.00 | - | - | 145.00 | - | - |
| Sales and Use Tax | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 |
| Franchise Tax | - | - | - | - | - | - | 3,300.00 | - | - | - | - | - |
| Payroll Tax | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Yearly IRS Taxes | - | - | - | - | - | - | - | - | - | - | - | 40,000.00 |
| Sub Contractors | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 | 215,875.34 |
| Construction Materials | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 |
| Monthly Truck Payments | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 |
| Gas | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 |
| Toll Tags | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Truck Maintenance | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 |
| Bonds | - | 2,598.77 | - | - | 4,054.46 | - | - | 1,576.85 | - | - | - | 1,276.98 |
| City/State Contractor Registration | - | 125.00 | - | - | 125.00 | - | - | 125.00 | - | - | 125.00 | - |
| Food - Per Diem | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| Travel - Per Diem | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 |
| Lodging | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Onsite Office | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 |
| Equipment Rentals | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 |
| Storage Containers | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 |
| Fringe Benefits | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 |
| **Total Expenses** | 364,577.01 | 331,655.78 | 328,932.01 | 339,827.01 | 333,111.47 | 328,932.01 | 342,877.01 | 330,883.86 | 328,932.01 | 339,577.01 | 329,057.01 | 370,458.99 |
| **Bankruptcy Fees** | | | | | | | | | | | | |
| Tittle Law Firm | 110,000.00 | - | - | - | - | - | - | - | - | - | - | - |
| Subchapter V Trustee | 7,000.00 | - | - | - | - | - | - | - | - | - | - | - |
| LG Funding LLC | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 |
| Specialty Capital | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 |
| SQ Advance | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 |
| Priority Unsecured Creditors | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 |
| General Unsecured Creditors | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| **Total Bankruptcy Fees** | 145,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 |
| **Net Income** | (157,242.04) | (7,320.81) | 10,402.96 | 19,507.96 | (8,776.50) | (4,597.04) | (18,542.04) | (6,548.89) | (4,597.04) | (15,242.04) | (4,722.04) | (46,124.02) |
| **Ending Cash** | $ 191,869.96 | $ 184,549.15 | $ 194,952.11 | $ 214,460.07 | $ 205,683.57 | $ 201,086.53 | $ 182,544.49 | $ 175,995.60 | $ 171,398.56 | $ 156,156.52 | $ 151,434.48 | $ 105,310.46 |

**STM Construction LLC**
**3-YEAR PROJECTIONS**
**YEAR 2**

| | May-26 | Jun-27 | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 105,310.46 | $ 69,150.93 | $ 65,912.63 | $ 80,398.10 | $ 103,988.57 | $ 99,294.58 | $ 98,780.05 | $ 84,320.52 | $ 81,854.14 | $ 81,339.61 | $ 70,180.08 | $ 69,540.55 |
| **Capital Contribution** | | | | | | | | | | | | |
| **Revenue** | | | | | | | | | | | | |
| Projects | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 |
| Facilities | - | - | 15,000.00 | 35,000.00 | - | - | - | - | - | - | - | - |
| **Total Revenue** | 448,142.83 | 448,142.83 | 463,142.83 | 483,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 | 448,142.83 |
| **Expenses** | | | | | | | | | | | | |
| Payroll | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 |
| Rent | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| Utilities | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Internet/Phone | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Quickbooks | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 |
| Office Supplies | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 |
| General Liability Insurance | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - |
| Umbrella Policy | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - |
| Builders Risk Policy | 25,000.00 | - | - | - | - | - | - | - | - | - | - | - |
| Auto Insurance Policy | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Workers Comp Insurance | 145.00 | - | - | 145.00 | - | - | 145.00 | - | - | 145.00 | - | - |
| Sales and Use Tax | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 |
| Franchise Tax | | | | | | | 3,300.00 | | | | | |
| Payroll Tax | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Yearly IRS Taxes | | - | - | - | - | - | - | - | - | - | - | 40,000.00 |
| Sub Contractors | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 | 307,128.66 |
| Construction Materials | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 |
| Monthly Truck Payments | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 |
| Gas | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 |
| Toll Tags | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Truck Maintenance | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 |
| Bonds | - | 2,598.77 | - | - | 4,054.46 | - | - | 1,576.85 | - | - | - | 1,276.98 |
| City/State Contractor Registration | | 125.00 | 125.00 | - | 125.00 | 125.00 | - | 125.00 | - | - | 125.00 | - |
| Food - Per Diem | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| Travel - Per Diem | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 |
| Lodging | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Onsite Office | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 |
| Equipment Rentals | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 |
| Storage Containers | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 |
| Fringe Benefits | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 |
| **Total Expenses** | 455,830.33 | 422,909.10 | 420,185.33 | 431,080.33 | 424,364.79 | 420,185.33 | 434,130.33 | 422,137.18 | 420,185.33 | 430,830.33 | 420,310.33 | 461,712.31 |
| **Bankruptcy Fees** | | | | | | | | | | | | |
| Tittle Law Firm | - | - | | | | | | | | | | - |
| Subchapter V Trustee | - | - | | | | | | | | | | - |
| LG Funding LLC | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 |
| Specialty Capital | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 |
| SQ Advance | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 |
| Priority Unsecured Creditors | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 |
| General Unsecured Creditors | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| **Total Bankruptcy Fees** | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 | 28,472.03 |
| **Net Income** | (36,159.53) | (3,238.30) | 14,485.47 | 23,590.47 | (4,693.99) | (514.53) | (14,459.53) | (2,466.38) | (514.53) | (11,159.53) | (639.53) | (42,041.51) |
| **Ending Cash** | $ 69,150.93 | $ 65,912.63 | $ 80,398.10 | $ 103,988.57 | $ 99,294.58 | $ 98,780.05 | $ 84,320.52 | $ 81,854.14 | $ 81,339.61 | $ 70,180.08 | $ 69,540.55 | $ 27,499.04 |

**STM Construction LLC**
**3-YEAR PROJECTIONS**
**YEAR 3**

| | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 27,499.04 | $ 117.24 | $ 654.82 | $ 18,916.17 | $ 46,282.52 | $ 45,364.41 | $ 48,625.76 | $ 37,942.11 | $ 39,251.61 | $ 42,512.96 | $ 35,129.31 | $ 38,265.66 |
| **Capital Contribution** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Revenue** | | | | | | | | | | | | |
| Projects | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 |
| Facilities | - | - | 15,000.00 | 35,000.00 | - | - | - | - | - | - | - | - |
| **Total Revenue** | 451,345.91 | 451,345.91 | 466,345.91 | 486,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 | 451,345.91 |
| **Expenses** | | | | | | | | | | | | |
| Payroll | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 | 54,000.00 |
| Rent | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| Utilities | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Internet/Phone | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Quickbooks | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 |
| Office Supplies | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 | 100.00 | 100.00 | 100.00 | 350.00 |
| General Liability Insurance | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - | 9,000.00 | - | - |
| Umbrella Policy | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - | 1,500.00 | - | - |
| Builders Risk Policy | 25,000.00 | - | - | - | - | - | - | - | - | - | - | - |
| Auto Insurance Policy | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| Workers Comp Insurance | 145.00 | - | - | 145.00 | - | - | 145.00 | - | - | 145.00 | - | - |
| Sales and Use Tax | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 |
| Franchise Tax | - | - | - | - | - | - | 3,300.00 | - | - | - | - | - |
| Payroll Tax | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| Yearly IRS Taxes | - | - | - | - | - | - | - | - | - | - | - | 40,000.00 |
| Sub Contractors | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 | 301,554.01 |
| Construction Materials | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 | 15,765.15 |
| Monthly Truck Payments | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 | 3,822.00 |
| Gas | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 | 3,200.00 |
| Toll Tags | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Truck Maintenance | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 | 1,665.00 |
| Bonds | - | 2,598.77 | - | - | 4,054.46 | - | - | 1,576.85 | - | - | - | 1,276.98 |
| City/State Contractor Registration | - | 125.00 | - | - | 125.00 | - | - | 125.00 | - | - | 125.00 | - |
| Food - Per Diem | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| Travel - Per Diem | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 | 1,150.00 |
| Lodging | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Onsite Office | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 | 880.85 |
| Equipment Rentals | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 | 1,358.67 |
| Storage Containers | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 | 640.00 |
| Fringe Benefits | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 |
| **Total Expenses** | 450,255.68 | 417,334.45 | 414,610.68 | 425,505.68 | 418,790.14 | 414,610.68 | 428,555.68 | 416,562.53 | 414,610.68 | 425,255.68 | 414,735.68 | 456,137.66 |
| **Bankruptcy Fees** | | | | | | | | | | | | |
| Tittle Law Firm | - | - | - | - | - | - | - | - | - | - | - | - |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| LG Funding LLC | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 | 5,002.22 |
| Specialty Capital | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 | 3,565.34 |
| SQ Advance | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 | 4,626.29 |
| Priority Unsecured Creditors | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 | 14,478.18 |
| General Unsecured Creditors | 800.00 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 | 5,801.85 |
| **Total Bankruptcy Fees** | 28,472.03 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 | 33,473.88 |
| **Net Income** | (27,381.80) | 537.58 | 18,261.35 | 27,366.35 | (918.11) | 3,261.35 | (10,683.65) | 1,309.50 | 3,261.35 | (7,383.65) | 3,136.35 | (38,265.63) |
| **Ending Cash** | $ 117.24 | $ 654.82 | $ 18,916.17 | $ 46,282.52 | $ 45,364.41 | $ 48,625.76 | $ 37,942.11 | $ 39,251.61 | $ 42,512.96 | $ 35,129.31 | $ 38,265.66 | $ 0.03 |

**SCHEDULE OF ASSUMED EXECUTORY CONTRACTS**

| Contract Party | Contract | Cure Amount |
| --- | --- | --- |
| NPH Ventures, LLC | Agreement between Contractor and Subcontractor | $0.00 |
| Comell Storefront Systems | Agreement between Contractor and Subcontractor | $0.00 |
| D&H Technologies | Agreement between Contractor and Subcontractor | $0.00 |
| EMJ | Agreement between Contractor and Subcontractor | $0.00 |
| High Tech Cabinets LLC | Agreement between Contractor and Subcontractor | $0.00 |
| Ideal Fence | Agreement between Contractor and Subcontractor | $0.00 |
| JD Concrete | Agreement between Contractor and Subcontractor | $0.00 |
| JG Construction Enterprise | Agreement between Contractor and Subcontractor | $0.00 |
| JP Plumbing Services LLC | Agreement between Contractor and Subcontractor | $0.00 |
| MJ Flooring | Agreement between Contractor and Subcontractor | $0.00 |